

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0961-07

---

**ORLANDO SANCHEZ, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON DISCRETIONARY REVIEW OF CASE 13-03-698-CR
### OF THE THIRTEENTH COURT OF APPEALS
### HIDALGO COUNTY

---

ALCALA, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, PRICE, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined. WOMACK, J., concurred in the judgment.

### OPINION ON MOTIONS FOR REHEARING

On our own motion, we issue this opinion in the place of our October 6, 2010 opinion.

*Sanchez v. State*, ___ S.W.3d ___, PD-0961-07, 2010 Tex. Crim. App. LEXIS 1242 (Tex.

Crim. App. Oct. 6, 2010) (not yet reported). This opinion addresses the State's petition for

discretionary review challenging the decision by the Thirteenth Court of Appeals on the

appeal filed by appellant, Orlando Sanchez. *See Sanchez v. State*, 221 S.W.3d 769, 774 (Tex. App.—Corpus Christi 2007). Having withdrawn our former opinion, we overrule the State's motion for rehearing, overrule appellant's *pro se* motion for rehearing,[1] and dismiss appellant's attorney's motion for rehearing as untimely filed.

The Thirteenth Court of Appeals found harmful error in the phrasing of the jury instructions, reversed the conviction, and remanded for a new trial. We agree with the court of appeals that the instructions were erroneous, albeit for a different reason, but we conclude the error was harmless and, therefore, reverse the court's judgment.

## I. Background

Police officers were called when a woman was heard screaming in a motel room. After they arrived at the motel, the officers heard the fire of a stun gun and a woman screaming inside a motel room. The officers immediately entered the room through the front door and discovered appellant lying next to a woman, who was pronounced dead at the scene. Her bruised body had markings on her neck and chest that appeared to be from a stun gun. The officers arrested appellant; he was the only person with the decedent in the room, which had no other accessible entry or exit other than the door through which the officers had entered. After appellant's arrest, the officers found the box for the stun gun inside his truck, which was parked nearby.

---

[1] Appellant filed a *pro se* motion for extension of time to file the motion for hearing, and our Court granted the request.

Appellant was indicted, and a jury trial ensued. Dr. Fulgencio Salinas, who performed the autopsy on the decedent, provided the sole evidence of the cause of the decedent's death. He said that the cause of her death was "asphyxia by strangulation." He defined "asphyxia" as the lack of oxygen to the brain and other organs. He determined that the decedent "died of asphyxia by strangulation and the stun gun was used." Although he could limit the possible manner and means by which the decedent was asphyxiated, he could not precisely determine whether she was asphyxiated by manually choking her with his hands, by smothering her, by the use of a stun gun, or by any combination of these.

In accordance with the wording of the indictment, the trial court's jury instructions permitted conviction of appellant for murder if the evidence proved that

(1)     he intentionally or knowingly caused the death of the complainant by choking her with his hand;

(2)     he intentionally or knowingly caused the death of the complainant by manner and means to the Grand Jurors unknown;

(3)     he, with intent to cause serious bodily injury to an individual, committed an act clearly dangerous to human life by placing a stun gun on the person of the complainant that caused the death of the complainant; or

(4)     he, with intent to cause serious bodily injury to the complainant, committed an act clearly dangerous to human life by manner and means to the Grand Jurors unknown that caused the death of the complainant.

Instructing on these four alternative manner and means, the trial court overruled appellant's objections that the two "manner and means unknown" theories should be excluded for lack of any evidence that the manner and means of death were unknown.

The court of appeals held that the trial court committed reversible error by permitting the jury to convict appellant on theories not supported by the evidence. *See id.* at 779-80. Citing this Court's decision in *Hicks v. State*, 860 S.W.2d 419 (Tex. Crim. App. 1993), the court of appeals determined that the *Hicks* rule applied because two of the alternatives in the indictment had alleged that the murder was caused by manner and means unknown to the grand jury. *Id.* (citing *Hicks*, 860 S.W.2d at 424). It determined that Dr. Salinas's testimony explained that the cause of death was asphyxia and the manner and means of death was strangulation, either manually or by a stun gun or both. *Id.* After concluding that the record established known manner and means of death, the court of appeals faulted the State for not producing evidence that the grand jury had used due diligence in attempting to ascertain the cause of death when it issued its indictment alleging unknown manner and means. *Id.* The court noted that the State usually satisfies this burden by calling a member of the grand jury to describe what actions the grand jury undertook to determine the cause of death. *Id.* It then held that the jury instructions were erroneous because they permitted the State to convict under an unknown-manner-and-means theory when the evidence at trial established a known manner and means. *Id.*

We granted the State's petition for discretionary review on four grounds. The State's third ground, which we address first because it pertains to the law that should be applied to the error analysis, asks, "May an appellate court use the *Hicks* rule to evaluate whether a 'manner and means unknown to the grand jury' theory was properly submitted to the jury

and, if so, has the Thirteenth Court of Appeals applied the rule correctly?" *See Hicks*, 860 S.W.2d at 424. The State's first two grounds also pertain to the error analysis by asserting that the court of appeals misinterpreted the evidence in the record when it determined that the evidence showed that the manner and means were known.[2] Concerning the court of appeals's harm analysis, the State's fourth ground inquires whether "an erroneously submitted alternat[iv]e theory [can] be harmful when the reviewing court finds the evidence sufficient to support the conviction under another submitted theory?"

## II. *Hicks* Is No Longer Viable After *Malik*[3]

In *Hicks*, the appellant contended that, because the indictment alleged that the instrument of death was unknown to the grand jury, the State was required to introduce evidence that the grand jury had used due diligence to ascertain the weapon used. *Hicks*, 860 S.W.2d at 424. This Court stated, "When an indictment alleges that the manner or means of inflicting the injury is unknown and the evidence at trial does not establish the type of weapon used, a prima facie showing is made that the weapon was unknown to the grand jury." *Id*. "However, if the evidence at trial shows what object was used to inflict the injury, then the State must prove that the grand jury used due diligence in attempting to ascertain the

---

[2] The State's grounds ask, "Does a trial court commit error by instructing the jury on the State's alternat[iv]e theory of murder by a 'manner and means to the grand jury unknown' where the sole medical expert testified repeatedly that he could not determine the exact manner and means of death by asphyxiation?" and "When assessing charge error, is a court of appeals free to reweigh and reinterpret the evidence adduced at trial?"

[3] *See Hicks v. State*, 860 S.W.2d 419, 424 (Tex. Crim. App. 1993); *Malik v. State*, 953 S.W.2d 234, 239 (Tex. Crim. App. 1997).

weapon used." *Id*. In *Hicks*, we determined that, because the evidence at trial was inconclusive as to the instrumentality that was responsible for the decedent's death, the State did not need to provide evidence that the grand jury had used due diligence in attempting to ascertain the murder weapon. *Id*. This Court held that the evidence was sufficient by comparing it to the assertions in the jury charge actually given. *Id*.

The due diligence rule for reviewing the sufficiency of the evidence, as applied by *Hicks,* originated over a century ago. *See Jorasco v. State*, 6 Tex. Ct. App. 238 (Tex. Ct. App. 1879). The indictment had alleged that Jorasco had unlawfully taken a horse from "some person to the grand jurors unknown." *Id*. at 241. The Court explained that the pleading, which stated that the name of the person was unknown, was "sufficient, where the name of the injured party is unknown." *Id*. Concluding that the indictment was "good," the Court held that the motion to quash had been properly overruled. *Id*. The evidence was then examined for sufficiency. *Id*. The Court began by evaluating the evidence admitted at trial and concluding that it established that the horse had been taken from a known person, who had been identified by the witnesses. *Id*. at 243. Then, the Court compared the evidence to the allegations in the indictment and found they did not match. *Id*. The Court discussed decisions from England that had applied the rule that a fact finder can infer that the name of a complainant was unknown to the grand jury when the evidence at trial shows that the name of the person is unknown. *Id*. Furthermore, if the name of the person is disclosed at a trial, then "the jury will be justified in doubting whether it was unknown to the grand jury, unless

some thing appears in the course of the evidence to remove the doubt and satisfy their minds." *Id*. The Court faulted the State for failing to present evidence showing that the name of the complainant was unknown to the grand jury when it issued its indictment. *Id*. The Court held that the evidence was insufficient by comparing it to the assertions in the indictment. *Id*. at 244 (reversing judgment "[b]ecause the evidence does not sustain the indictment").

Since *Jorasco*, which conducted the sufficiency review by comparing the evidence to the indictment, and *Hicks*, which conducted the sufficiency review by comparing the evidence to the actual jury charge, this Court has determined, in *Malik v. State*, that sufficiency review should be conducted by comparing the evidence to the hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 239 (Tex. Crim. App. 1997); *Hicks*, 860 S.W.2d at 425; *Jorasco*, 6 Tex. Ct. App. at 240. In *Malik*, this Court determined that, rather than comparing the evidence to the elements in the jury charge, "sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik*, 953 S.W.2d at 240. We explained that "such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. Because a sufficiency review now compares the evidence to a hypothetically correct jury instruction rather than to the indictment or actual jury instruction, this Court has

concluded that "the rule in cases like *Hicks* is no longer viable in light of our decision in *Malik*." *See Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999) (citing *Malik*, 953 S.W.2d at 239).

The Thirteenth Court of Appeals disregarded this Court's statement about the viability of *Hicks* by noting that the statement in *Rosales* was dicta. *See Sanchez*, 221 S.W.3d at 774; *Rosales*, 4 S.W.3d at 231 (Meyers, J., concurring) (abandonment of *Hicks* was dicta because facts were analyzed for compliance with *Hicks* rule before court determined rule was no longer valid). The court of appeals also disregarded this Court's statement about *Malik*'s effect on *Hicks*, explaining that *Malik* was inapplicable to "charge error." *Sanchez*, 221 S.W.3d at 777 (stating that in *Guevara v. State*, 152 S.W.3d 45, 54 (Tex. Crim. App. 2004), "[t]he Court of Criminal Appeals did not rely upon or even cite *Malik* in its opinion because *Malik* has no place in a charge error harm analysis."). The court of appeals, however, failed to recognize that *Malik* and *Hicks* are both rules for determining the sufficiency of the evidence. *Malik*, 953 S.W.2d at 239; *Hicks*, 860 S.W.2d at 425. At most, *Malik* pertains to charge-error only to the extent that, in its assessment of what the hypothetically correct jury charge might be, it might assist the appellate court in determining whether the actual charge was phrased correctly. *See Malik*, 953 S.W.2d at 239. The court of appeals erred in applying the *Hicks* rule to charge-error complaints when it was a sufficiency-of-the-evidence rule. *See Sanchez*, 221 S.W.3d at 777. Our research has yielded no case in which a court has applied *Hicks* to charge-error complaints, as the court of appeals did here. No valid reason exists to expand *Hicks*, for the first time, from its now-defunct purpose as a sufficiency-of-the-

evidence rule to the phrasing of jury instructions. *See Sanchez*, 221 S.W.3d at 774. Because *Malik* has rendered defunct the *Hicks* rule, we overrule *Hicks*.[4] And because appellant's argument relies on the viability of *Hicks*, it fails.

We conclude the court of appeals erred in applying the *Hicks* rule to appellant's jury-charge-error complaint and sustain the State's third ground for review.

### III. Jury-Charge Error Analysis

In its first two grounds for review, the State challenges the Thirteenth Court of Appeals's assessment of the evidence in the record. The State contends that, because the "sole medical expert testified repeatedly that he could not determine the exact manner and means of death by asphyxiation," the jury instructions properly permitted a conviction for murder by "manner and means to the grand jury unknown."

The Code of Criminal Procedure provides that the trial court must "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case." *See* TEX. CODE CRIM. PROC. art. 36.14. The Court's instructions must "apply the law to the facts adduced at

---

[4]  Many of the courts of appeals have already determined that the due diligence rule in *Hicks* no longer exists. *See*, *e.g.*, *Bermudez v. State*, No. 13-05-246-CR, 2007 Tex. App. LEXIS 2809, *11 (Tex. App.—Corpus Christi 2007, pet. ref'd) ("The court of criminal appeals, however, has expressly disavowed the 'due diligence' rule cited by appellant.") (not designated for publication); *Fagan v. State*, 89 S.W.3d 245, 249 (Tex. App.—Texarkana 2002, pet. ref'd) ("[T]he rule has lost its underpinning as well as any reason for its existence."); *In re A. J. G.*, 131 S.W.3d 687, 694 (Tex. App.—Corpus Christi 2004, pet. denied) (explaining that "due diligence" standard of *Hicks* was replaced by the "hypothetically correct jury charge" standard of *Malik*); *but see Allen v. State*, 149 S.W.3d 254, 257 (Tex. App.—Fort Worth 2004, pet. ref'd); *Rose v. State,* 76 S.W.3d 573, 575 (Tex. App.—Corpus Christi 2002, no pet.); *Richards v. State*, 54 S.W.3d 348, 350 (Tex. App.—Houston 2001, pet. ref'd).

trial." *Gray v. State*, 152 S.W.3d 125, 127-28 (Tex. Crim. App. 2004). As a general rule, the instructions must also conform to allegations in the indictment. *See Curry v. State*, 30 S.W.3d 394, 399 (Tex. Crim. App. 2000). Jury instructions, however, may sometimes permissibly deviate from the allegations in an indictment.[5] *Id.* (surplusage need not be proven except when "the unnecessary matter is descriptive of that which is legally essential to charge a crime").

The term "manner and means" refers to the *actus reus* of the crime. *Jefferson v. State*, 189 S.W.3d 305, 316 (Tex. Crim. App. 2006) (Cochran, J., concurring) (noting that manner and means is a "description of how the offense was committed."). Syntax can help identify manner and means: "[g]enerally, adverbial phrases, introduced by the preposition 'by,' describe the manner and means of committing the offense." *Id.* ("The use of the prepositional word 'by' in either a statute or an indictment is a tip-off that probably. . . the phrase will be a description of how the offense was committed."). The means of death may refer to the weapon or instrument responsible for the deceased's death. *See Ngo v. State,* 175 S.W.3d 738, 746 n.27 (Tex. Crim. App. 2005). Neither the manner (the *actus reus*) nor the means (the "instrument of death") need to be agreed upon unanimously by a jury. *Id*. (noting that

---

[5]     Indictments may allege that the name of a complainant is unknown or that manner or means are unknown. *See Garrett v. State*, 682 S.W.2d 301, 308 (Tex. Crim. App. 1984). Indictments, however, may be challenged through a pretrial motion to quash for lack of specificity or other reasons. *See Curry v. State*, 30 S.W.3d 394, 399 (Tex. Crim. App. 2000) (stating that indictment that fails to provide adequate notice is subject to motion to quash). Nothing in this opinion affects the law for adequacy of indictments, motions to quash, or the notice to which a defendant may be entitled.

the jury must be unanimous on the gravamen of the offense of murder, which is causing the death of a person, but the jury need not be unanimous on the manner and means); *see also Jefferson,* 189 S.W.3d at 315; *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). The jury need only unanimously agree that appellant caused the death of the complainant. *See Ngo*, 175 S.W.3d at 746.

The State challenges the exclusion of the unknown manner-and-means theory by asserting that the theory was consistent with the evidence at trial. The evidence, however, showed that the cause of death was asphyxia, which means deprivation of oxygen to the brain and other organs.  At trial, the State's expert testified, as follows:

> My conclusion, once again, is asphyxia. That's the main thing, asphyxia. The lack of oxygen to the brain that kills the person. Whether it was caused by strangulation or caused by stun gun I'm not 100 percent sure which one did it but the cause of death is asphyxia.

The State correctly notes that the evidence showed that the asphyxia could have occurred by the offender strangling the complainant with his hands, which would commonly be understood as "choking"; by smothering the complainant by covering her mouth and nose; by the use of a stun gun; or by any combination of these.  The evidence in the record supports only a limited list of known alternatives for the manner and means of the cause of death.

Because the indictment permitted a conviction under four alternatives for murder, the State could obtain a conviction if any of the alternatives were proven. *Id*. The trial court's instructions should have reduced the four theories to the two theories with the specified manner and means that were supported by evidence at trial. *See Gray*, 152 S.W.3d at 127-28

(jury charge must apply law to "fact adduced at trial"). Furthermore, the two theories with the unknown manner and means were unnecessary surplusage as they were unessential to the charged offense of murder because the indictment and jury instructions had also alleged two other alternatives for that same offense. *See Curry*, 30 S.W.3d at 399.

We conclude the court of appeals reached the correct result by determining that the jury instructions were erroneous in their inclusion of the unknown manner-and-means theories for the cause of death. *See Sanchez*, 221 S.W.3d at 776.[6] We overrule the State's first two grounds for review.

## IV. Harm Analysis

In its fourth ground for review, the State argues that an erroneously submitted alternative theory is not harmful when the reviewing court finds the evidence sufficient to support a conviction under another submitted theory. As the Thirteenth Court of Appeals accurately noted, if an error is preserved with a timely objection, as here, then the jury-charge error requires reversal if the appellant suffered some harm as a result of the error. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). The harm caused by the error must be considered "in light of the entire jury charge, the state of the evidence,

---

[6] Our first opinion in this case focused on whether the manner and means of death was consistent with the "unknown/unknowable" distinction set forth in that opinion. *Sanchez v. State*, ___ S.W.3d ___, PD-0961-07, 2010 Tex. Crim. App. LEXIS 1242, *23-24 (Tex. Crim. App. Oct. 6, 2010) (not yet reported). We have granted a petition for discretionary review for a decision that applied that standard. *See Moulton v. State*, ___ S.W.3d ___, No. 06-10-00100-CR, 2011 Tex. App. LEXIS 8266 (Tex. App.—Texarkana 2011, pet. granted) (not yet reported).

including the contested issues and the weight of probative evidence, the arguments of counsel and any other relevant information revealed by the record of the trial as a whole." *Id*. at 171; *see also* TEX. CODE CRIM. PROC. art. 36.19. Appellant must have suffered actual harm, not merely theoretical harm. *See Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986). Had appellant failed to preserve the jury-charge error, then we would have reviewed the record for egregious harm. *See id*.

In a jury charge alleging alternative theories, harm must be measured "at least in part, against the likelihood that the jury's verdict was actually based upon an alternative available theory of culpability not affected by erroneous portions of the charge." *Atkinson v. State,* 923 S.W.2d 21, 27 (Tex. Crim. App. 1996), *overruled on other grounds by Motilla v. State,* 78 S.W.3d 352 (Tex. Crim. App. 2002). When a jury returns a general guilty verdict on an indictment charging alternate methods of committing the same offense, the verdict stands "if the evidence is sufficient to support a finding under any of the theories submitted."*Kitchens*, 823 S.W.2d at 258-59; *see also Rosales*, 4 S.W.3d at 231. "[T]he presence of overwhelming evidence of guilt plays a determinative role in resolving the issue" and may be considered when assessing jury-charge error. *Harris v. State*, 790 S.W.2d 585, 587 (Tex. Crim. App. 1989).

Considering the entire record, we conclude that the erroneous jury charge did not result in "actual harm" to appellant. *See Arline*, 721 S.W.2d at 348; *Almanza*, 686 S.W.2d at 171. Although erroneously permitting the jury to find appellant guilty for causing the

decedent's death by unknown manner and means, the jury could have convicted appellant for murder without being unanimous in its determination as to the manner or means of death. *See Jefferson,* 189 S.W.3d at 315; *Ngo,* 175 S.W.3d at 746; *Kitchens*, 823 S.W.2d at 258. All four of the alternatives for convicting appellant required the jury to be convinced beyond a reasonable doubt that appellant caused the death of the complainant, and the evidence at trial established this. The complainant was heard screaming just before a stun gun fired, and she was found deceased by police officers who entered the motel room immediately after hearing the gun. The officers found appellant alone with the deceased complainant in the room, from which no one else could have left or entered without being seen by the officers.

The evidence proved the two alternatives in the jury instructions that permitted a finding of guilt for murder for causing the death of the complainant by "choking her with his hand" or "placing a stun gun" on her. The evidence established that the cause of the complainant's death was asphyxia; she died because she was deprived of oxygen to the brain and other organs. The medical examiner testified that he was 95 percent sure that manual strangulation was the manner and means of the asphyxia, with the stun gun being the only other possible manner and means.

The court of appeals mistakenly analogized this case to the facts in *Hutch v. State*, 922 S.W.2d 166, 170-71 (Tex. Crim. App. 1996). In *Hutch*, the trial court erroneously instructed the jury that if they believed that appellant was not wearing a seatbelt, then the detention was unlawful and they must disregard the officer's testimony. *Id.* Not only did it instruct the jury

on the opposite of what the law actually was, the instructions in *Hutch* concerned a single theory of prosecution. *Id*. Unlike *Hutch*, the trial court's instructions included a correct statement of the law that, in all of the alternatives, required proof that appellant caused the death of the complainant and, in two of the alternatives, required proof that appellant caused the death of the complainant by the manner and means of choking her with his hand or placing a stun gun on her. *Id*. Furthermore, these instructions had alternative theories of prosecution with sufficient evidence to support the conviction under one of the theories properly included in the jury instructions. *See Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999); *Kitchens*, 823 S.W.2d at 258-59. *Hutch*, therefore, is inapplicable.

In light of the entire record, we conclude the instructions on "unknown" manner and means were harmless. *See Rosales*, 4 S.W.3d at 231; *Kitchens*, 823 S.W.2d at 258-59. We sustain the State's fourth ground for review.

## V. Conclusion

We agree with the court of appeals that the trial court erred by instructing the jury on the "unknown" manner and means of committing the offense. However, viewing the record as a whole, we find the charge error harmless. We reverse the judgment of the court of appeals and render a judgment reinstating the judgment of the trial court.

Delivered: May 16, 2012

Publish.