

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00527-CR

ANTHONY WAYNE TANKSLEY                                          APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

## FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Anthony Wayne Tanksley of failure to register as a sex offender, and in a single point, he challenges the sufficiency of the evidence to support his conviction.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.

---

[1]*See* Tex. R. App. P. 47.4.

307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011). The trier of fact is the sole judge of the weight and credibility of the evidence, *see* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Wise*, 364 S.W.3d at 903, and we must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Wise*, 364 S.W.3d at 903.

Tanksley's indictment alleged that he was required to register as a sex offender, that on or about July 14, 2009, he intentionally or knowingly failed to report his anticipated move date and new address to the Fort Worth Police Department not later than seven days before his intended change of address, that he had a change of address, and that he had a reportable conviction or adjudication for the sexual assault of a child under seventeen years of age in cause number 0661340A, on January 12, 1999, in Criminal District Court Number 1 of Tarrant County. *See* Tex. Code Crim. Proc. Ann. arts. 62.055(a) (West 2006 & Supp. 2012), 62.102(a) (West 2006). The second paragraph of Tanksley's indictment alleged the same prior conviction and registration requirement and alleged that on or about July 14, 2009, Tanksley had intentionally or knowingly failed to provide to the Fort Worth Police Department

2

his new address, proof of identity, or proof of residence not later than seven days after changing his address. *See id.*; *see also Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012) (op. on reh'g) (stating that when a jury returns a general guilty verdict on an indictment charging alternate methods of committing the offense, the verdict stands if the evidence is sufficient to support a finding under any of the theories submitted).

Tanksley complains that the evidence is insufficient to support his conviction because the State failed to prove either that he had intended to move or had actually moved from 1179 Debbie Street, his registered address.[2]

The record reflects that in August 2008, Tanksley reported 1179 Debbie Street as his address to the Fort Worth police and that he reported the same address again on August 20, 2009, when he also told Fort Worth Police Detective Tracy Tillerson that he was planning to move and exhibited concern about being published in the newspaper if he reported a new address.[3] Detective Tillerson testified that she explained to Tanksley the "seven days before" and "seven days after" moving requirements—that is, if Tanksley intended to move, he had to see the detective seven days before moving and again within seven

---

[2]Tanksley does not challenge, and the evidence is sufficient to support, the remaining elements of the offense.

[3]Detective Tillerson explained that, at the time, when someone who was required to register as a sex offender was classified as moderate or high risk and changed his address, the police department would publish that information in the newspaper. In August 2009, Tanksley was classified as high risk, which would have required publication; his classification was later corrected to low risk.

days after moving—which she had also explained to him in August 2006.[4]

In addition to declaring that 1179 Debbie Street remained his residence, Tanksley also told Detective Tillerson that the house had electricity, water, and a land line telephone connection and that his mother and two of his sons lived with him. But Tanksley admitted that he had lied to Officer Tillerson when he told her that 1179 Debbie Street had a telephone land line. And although Tanksley's mother owned 1179 Debbie Street, Tanksley's sister Wanda testified that in 2008 and 2009, their mother had suffered a stroke and moved in with her in Arlington. In May 2009, after receiving a tip that Tanksley might no longer be living at 1179 Debbie Street, Fort Worth Police Officer Rick Benson visited the property and noted that it had no electric meter; on June 15, 2009, the Fort Worth Water Department cut off the water to 1179 Debbie Street.

While Wanda testified that her sister Stephanie, Stephanie's husband and son, Tanksley, and Tanksley's two sons, Joshua and Anthony Jr., lived at 1179 Debbie Street in 2008 and 2009, Angela Traister, who had worked for Fort Worth's Code Enforcement Department during that time, testified that in November 2008, Wanda told her that she was going to kick everyone out of 1179 Debbie Street.[5] Wanda acknowledged having told a code compliance officer that

---

[4]In August 2006, Tanksley had signed a form indicating that he understood these requirements, including his lifetime duty to register.

[5]When Traister received the case in 2008, 1179 Debbie Street had water and electricity. Traister testified that by July 30, 2008, the house no longer had water, but people continued to live there as of September 2008. It is unclear

4

she had planned to kick her family out, but she said that she had never followed through with her threat.

Officer Benson noted that 1179 Debbie Street appeared to be unoccupied and was in "very bad repair" on his visits to the property on May 12, May 15, May 19, June 3, June 9, July 2, July 6, and July 13, 2009. On July 14, 2009, Traister left a notice of code violation on the front door.[6] Traister spoke with Wanda by phone on July 15, 2009, and noted that Wanda told her that she had kicked everyone out so that she could start trying to make repairs and that she had turned the water and electricity off in June 2009. Traister opined that no one was living in the house as of July 15, although during the defense's case, Wanda testified that Traister was mistaken.

Officer Benson executed a search warrant for the house on July 14, 2009, and photos of the house's exterior and interior were admitted and published to the jury. The house had a boarded-up window or door and a broken window; an older vehicle with a flat tire was parked in front of the house, and Officer Benson testified that it had not been moved from May to December. There was an empty casing where an electric meter would have been, and Officer Benson stated that

---

from the record when water service was resumed before the water department turned it off again in June 2009. Although Traister considered the house to be in substandard condition and uninhabitable, she acknowledged that people could live there, albeit subject to code enforcement fines.

[6]The notice informed any occupants that tickets would be issued if they did not get an active water account immediately and that a re-inspection would occur in two days.

the electric meter's absence indicated that the house was without electricity.

Other photos showed what Officer Benson described as "a significant amount of trash" along the side of the house and the house's back yard, which he described as "severely overgrown."[7] Upon entering the home, Officer Benson smelled an odor that he associated with rotten food or mildew. There were some cups and plates on the kitchen counter that still had food and liquid in them, but Officer Benson said that their moldy contents were unfit for human consumption. The refrigerator and freezer were hot inside; the freezer was full of dead flies. Officer Benson agreed during cross-examination that it would be difficult to wash dishes with the water shut off, and he acknowledged that some furniture, clothing, and other personal items remained in the house, but he did not know to whom they belonged. The photos showed that the furniture and other belongings in the house were in disarray and that the house's interior was in poor condition.

Even though Wanda testified that someone was always at the home, no one was there during the hour and a half that Officer Benson searched the property, or when he returned the next day, or when Traister returned to the property on July 23 and August 17, 2009. During cross-examination, Wanda stated that someone should have been there when the search warrant was executed and said that she went by the house every other day in 2009.

No one was at 1179 Debbie Street when Officer Benson returned on

---

[7]Traister acknowledged that if someone did not have an active city water account, the trash might not be picked up and could pile up.

August 25, 2009, five days after Tanksley met with Officer Tillerson and told her that his address was still 1179 Debbie Street. No one was there when Traister returned on October 21, 2009,[8] January 13, 2010, May 5, 2010, or July 20, 2010. On October 22, 2010, Traister visited the property and encountered Tanksley in the front yard, but she did not see him when she returned in January 2011.

Officer Benson stated that he had received a tip that Tanksley lived at 2309 Sargent Street and that over the course of his investigation, including a day of surveillance of that address, he concluded that Tanksley had been living there instead of at 1179 Debbie Street. Tanksley never provided a change of address during the entire period that Officer Benson visited 1179 Debbie Street, and a warrant for Tanksley's arrest was issued on September 1, 2009.

Fort Worth Police Officer Michael Ruelas, who executed the arrest warrant, testified that he first went to 1179 Debbie Street. When he did not find Tanksley there, he then conducted surveillance at 2309 Sargent Street, the secondary address that he had for Tanksley. At around 4:30 p.m., he saw a vehicle pull into the driveway of 2309 Sargent Street; a black male passenger who resembled Tanksley exited the vehicle, ran into the house, and then jumped back into the vehicle. Officer Ruelas followed the vehicle, identified the suspect as Tanksley,

---

[8]Traister acknowledged during cross-examination that as of October 2009, there was still some concern that someone could be living in the house. However, Traister had in her October 21 notes that when she spoke with Wanda, Wanda told her that no one was supposed to be living in the home and that someone had kicked in the front door.

7

and arrested him.

Tanksley testified that he was disabled, received social security because he could not work, and was at home on multiple occasions but just let code enforcement knock. He also testified that he had an extra electric meter, which he would run at night and remove in the morning, and that he had run extension cords to the neighbor's house for electricity.[9] Tanksley claimed that in April 2009, his son Anthony Jr. had suffered brain damage and was hospitalized.[10] In April, May, and June 2009, and again in November 2009, Tanksley went back and forth between 1179 Debbie Street, the hospital, and his son's mother's home so that he could take care of Anthony Jr. Tanksley said that he had to bathe Anthony Jr., feed him, and constantly watch over him like a child.

During cross-examination, Tanksley admitted that Anthony Jr. was incarcerated for a 2011 conviction. Anthony Jr. had committed possession of a controlled substance on June 25, 2007, and was placed on probation on September 23, 2008. When the State petitioned to revoke his probation in March 2011, Anthony Jr. pleaded true to the allegation that he had lied to a police officer on August 11, 2009. Anthony Jr. had also pleaded true to having failed to report to his probation officer for most of his probation and to having changed his

---

[9]Officer Benson acknowledged during cross-examination that an extension cord could have been run to a neighbor's house, but he also stated that he did not see an extension cord.

[10]Tanksley clarified on cross-examination that his son had been hospitalized for a drug overdose.

8

address from 1179 Debbie Street without notifying his probation officer.

Tanksley admitted that on July 12, 2011, he had been convicted for failure to identify and for destroying, removing, or concealing a price tag and that he had given a false name to the police officer because he did not want to go to jail. But he said that he was not lying about 1179 Debbie Street being his residence.

Viewing all of the evidence in the light most favorable to the verdict, we conclude that the jury—as the sole judge of the witnesses' credibility—could have found beyond a reasonable doubt that on or around July 14, 2009, Tanksley had changed his address from 1179 Debbie Street and that he had intentionally or knowingly failed to report either his anticipated move date and new address not later than seven days before his intended change of address or had intentionally or knowingly failed to provide to the Fort Worth Police Department his new address, proof of identity, or proof of residence not later than seven days after changing his address. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Wise*, 364 S.W.3d at 903; *see also Sanchez*, 376 S.W.3d at 775. Therefore, we overrule Tanksley's sole point and affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 20, 2013

9