

`

IN THE
TENTH COURT OF APPEALS

_____

No. 10-19-00191-CR

_____

PHILLIP ANDREW CAMPBELL,

                                                                              Appellant

 v.

THE STATE OF TEXAS,

                                                                              Appellee

_____

From the 413th District Court
Johnson County, Texas
Trial Court No. DC-F201700948

_____

## DISSENTING OPINION

_____

Jade died because appellant used his hands to squeeze her neck hard enough and for enough time to cut off the blood flow to her brain resulting in her death. On this, there is really no dispute. There is also no dispute that Jade and appellant were consenting adults that had agreed to engage in what some would call rough sex or erotic asphyxiation, while others would call it disgusting or aberrant behavior. Even if Jade agreed to rough sex, there is no question that the conduct actually engaged in far exceeded the scope of her consent. The autopsy evidence indicated she had been beaten.

After telling her mother she would be home in about 30 minutes, the home to which she returned is eternal. But neither the jury nor this Court are here to judge the morality of the conduct in which these adults were engaged. The question for the jury to answer was whether her death was murder, and if not murder, was it manslaughter, and if not manslaughter, was it criminally negligent homicide. Our job is to determine if the trial court made an error that affected the judgment.

The State conceded at oral argument that the jury charge for murder erroneously included a definition of "intentionally." The charge included a definition of "intentionally" with regard to the "nature of conduct" when "result of conduct" was the only proper *mens rea* for the conduct at issue, murder. The definition in the charge was not "tailored" to the offense as required. *See Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015) ("A trial court errs when it fails to limit the language in regard to the applicable culpable mental states to the appropriate conduct element."). Appellant's only objection to the charge, and thus his focused objection, was that the definition of intentionally should be limited as appropriate for the "result" of conduct as indicted, murder. The charge was erroneous. Thus, the only question for this Court in this single-issue appeal is no longer about first determining whether the charge was erroneous. Rather, the sole question now is whether appellant suffered "some" harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

Murder is a result of conduct offense. *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003). Appellant choked Jade. Jade died as a result. Did appellant intend the result? That was one option in the charge available to the jury. There were at least

five different ways, manner and means, that would allow an affirmative answer to that question. An affirmative answer to that question found adequate support in the record on at least three of the manner and means. While the evidence is considered as one of the factors in the *Davis* analysis as described in *Almanza*, *see Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (*citing Davis v. State*, 13 S.W. 994, 995 (1890)), this is not the traditional sufficiency of the evidence analysis of *Jackson v. Virginia*. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). But the charge included an admittedly erroneous definition of "intentionally" that allowed the jury to convict the appellant if he intended to choke Jade. That he intended to choke Jade was not disputed. But because of the erroneous definition of "intentionally" in the charge, the jury could find him guilty of murder based on conduct that does not constitute murder.

We must determine if the error in the definition of "intentionally" as included in the jury charge caused "some" harm. As the Court of Criminal Appeals recently stated in *Jordan v. State*, 593 S.W.3d 340 (Tex. Crim. App. 2020):

> "Some harm" means actual harm and not merely a theoretical complaint. *Cornet v. State*, 417 S.W.3d 446, 449 (Tex. Crim. App. 2013); *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012). Reversal is required if the error was calculated to injure the rights of the defendant. *Cornet*, 417 S.W.3d at 449 (quoting *Almanza,* 686 S.W.2d at 171).

> To assess harm, we must evaluate the whole record, including the jury charge, contested issues, weight of the probative evidence, arguments of counsel, and other relevant information. *See Cornet*, 417 S.W.3d at 450; *Almanza*, 686 S.W.2d at 171. The record in this case demonstrates some harm because the only contested issue was self-defense, and the failure of the self-defense instructions to reference "Royal or others" made rejection of the defense inevitable.

*Id*. at 347.

Where I believe I differ from the analysis of my colleagues is whether there is "actual" not merely "theoretical" harm. I have read many cases that mention the topic. The articulation of the test is the same for "egregious" harm versus "some" harm in that both mean "actual" harm and not merely a "theoretical" complaint. But surely, the test must have some difference as to the actual versus theoretical nature of the harm; otherwise, how are we to consistently apply a standard for determining the extent of the harm? There are a lot more cases that discuss "egregious harm," and finding such harm is exceedingly rare. I believe that, even under those cases, this case could very well be egregious harm.

And if this were a civil proceeding, there would be no question about what we had to do. If the jury is charged on both a proper and an improper theory of liability and the charge is objected to by the party against whom the question is answered, the error in the charge is harmful because the party is unable to know, and therefore unable to show on appeal, that the answer is based on the improper theory. *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 389 (Tex. 2000). The test to overturn a civil judgment for money because of jury charge error is thus easier to meet than when the result might be an erroneous life conviction in a criminal case. If just one juror looked at the definition of intentionally and voted to convict appellant of murder because, at the very least appellant intended to choke Jade (nature of conduct) and she died as a result, appellant has been convicted on conduct that is not murder and had no ability to show actual harm. The definition erroneously given takes from appellant his only viable defense against the charge of murder.

No party has a duty to show or prove the presence or absence of harm. *Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008) ("To dispel any lack of clarity in our cases, we affirm that burdens of proof or persuasion have no place in a harm analysis conducted under *Almanza*."); *Ovalle v. State*, 13 S.W.3d 774, 787 (Tex. Crim. App. 2000); *see also Elizondo v. State*, 487 S.W.3d 185, 205 (Tex. Crim. App. 2016) ("Neither Elizondo nor the State has the burden with regard to showing or proving harm. We must make our own assessment as to whether harm occurred."). As the reviewing court, we have an independent duty to determine if appellant was harmed by the improper definition of "intentionally" included in the charge. No jury note stating, "Under the definitions in the charge, do we all have to agree that he intended to cause her death or only that he intended to choke her" was sent out of the jury room. If that is what it takes for us to determine that this is "actual" and not "theoretical" harm, then there will be few cases ever reversed because of charge error. I do not think the test is, or should be, so demanding. In reading the closing arguments, because the charge allowed a conviction on merely the intent to choke Jade, appellant's trial attorney could not argue that, while appellant intended to choke Jade to heighten the sexual pleasure, he did not intend to kill her. To dance around this issue, the argument was made that the death was an "accident." Well, the jury knew, and the State argued, that this, choking Jade, was no "accident."

To paraphrase the last sentence from *Jordan* quoted above as applicable to the relevant evaluation in this case:

The record in this case demonstrates some harm because the only contested issue was intent, and the failure of the definition of "intentionally" to limit the relevant conduct to intending the result made the finding of murder all but inevitable.

The death of this single mother and the circumstances which caused her to be in this situation are exceedingly tragic. But I would have to hold that based on the law as applied to this case as tried, defended, and charged, we must reverse the conviction and remand it for a new trial. Because the Court affirms the trial court's judgment of conviction, I respectfully dissent.

TOM GRAY
Chief Justice

Dissenting opinion delivered and filed May 19, 2021

