**AFFIRMED and Opinion Filed April 7, 2023**



In The

**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-22-00367-CR**
_____

**ABEL GONZALES MENDEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 422nd Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 18-10975-422-F**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Garcia
Opinion by Justice Reichek

Abel Gonzales Mendez appeals his conviction for sexual assault. Bringing two issues, appellant contends the evidence is legally insufficient to support his conviction and he suffered egregious harm from the trial court's failure to define the term "coercion" in its charge to the jury. We affirm the trial court's judgment.

### Background

In 2008, appellant began dating Nelly, the mother of the complainant, Ofelia.[1] Ofelia was nine years old at that time. Two years later, Nelly and appellant married,

_____

[1] The name Ofelia is a pseudonym used by the complainant in these proceedings.

and the three moved in together. Ofelia said appellant was her father figure, and she referred to him as Dad. Appellant called Ofelia "mija," meaning "my daughter." Nelly and appellant later had a child together, another daughter.

Ofelia stated that, when she was in the fifth grade, appellant began to grab or pinch her buttocks whenever they would say goodbye to each other if no one else was around. She said this made her feel uncomfortable, but she did not say anything. Approximately two months before the assault, Ofelia stated appellant pinched her buttocks again and, this time, she pulled away from him to indicate she did not like his actions. Shortly afterwards, appellant texted Ofelia asking "Mija, [does it bother you when I pinch your butt]?"[2] Ofelia responded that it did. Appellant then asked, "Do you want me to stop doing it? I didn't mean nothing wrong, mija." Ofelia told him she understood and it was okay.

On December 10, 2018, Ofelia was home from college for a long weekend, preparing to take final exams. She planned to return to campus later that day with her mother's car to bring things home for the holiday break. That morning, Nelly went into Ofelia's bedroom, woke her up, and asked her if she needed gas money. Ofelia responded that she did not and went back to sleep. Nelly then left to take her younger daughter to school and go to work.

---

[2] The original text was in Spanish.

A few minutes later, Nelly returned to the house to retrieve a mug of coffee she had forgotten. When Nelly walked inside, she saw appellant in Ofelia's room standing next to her bed. Nelly asked appellant what he was doing, and he responded that he was checking to see if Ofelia needed money. Nelly told him she had already done that and Ofelia was fine. Appellant then walked out of the room. Nelly closed Ofelia's door before leaving.

Ofelia testified that, after her mother left, she fell back asleep. The next thing she remembered was appellant next to her bed with his face between her cheek and shoulder. She said appellant began to kiss her, but instead of the usual peck on the cheek, the kiss was slow and sexual. When she realized what was happening, she rolled away from him to get him to stop. She stated "I would hope that he would have gotten the hint that it was making me uncomfortable."

Instead, appellant got on Ofelia's bed and lay down behind her, wrapping his arm around her waist. Ofelia testified appellant was approximately six feet tall and she was five feet four inches in height. Appellant slipped his hand under Ofelia's shirt before moving it under the waistband of her pajama pants and around to her buttocks. Ofelia stated she pulled appellant's hand out of her pants and appellant responded by whispering "Show me a little." Appellant then put his hand back into Ofelia's pants, slid it under her underwear, and inserted one or two fingers into her vagina while moving his hand back and forth. Ofelia testified she was shocked and could not move. When asked if she could have just walked away, Ofelia stated she

was too afraid of what appellant might do because her mother was not home. She could feel appellant pressing up against her from behind and she thought she felt him getting an erection.

After a minute or so, appellant got up onto his knees and Ofelia heard him removing his belt. She stated she thought appellant was going to rape her. She jumped off the bed, grabbed her phone, and walked quickly to the bathroom. As she left, she looked at appellant and confirmed he was kneeling on the bed and removing his belt. When she got into the bathroom, she locked the door and immediately called her mother.

Nelly testified that, after she arrived at work, she saw her daughter's number on the caller identification of her office phone. She answered and heard Ofelia crying. Nelly stated Ofelia sounded scared and was speaking in a low voice as though she did not want to be heard. Because of the crying, Nelly had a hard time understanding what Ofelia was saying, but she eventually understood that Ofelia was telling her appellant had touched her. Nelly immediately left to return home and called appellant while she was driving. After several calls went unanswered, appellant finally accepted her call. Nelly stated she yelled and cursed at appellant and he did not respond. When Nelly asked him if he had heard her, he responded "Yeah." Appellant later texted Ofelia, "I'm sorry mija."

Nelly found Ofelia sitting on the floor of the house crying with swollen eyes. Nelly had Ofelia put on clothes and drove her to the police station to press charges. A few days later, Nelly filed for a divorce.

At trial, appellant testified as to his version of what occurred. Appellant stated he went into Ofelia's room that morning to confirm that she did not need money. He stated he leaned over to give her a kiss goodbye and she wrapped her arms around him, hugged him tightly, and moved her head to kiss him on the lips. Appellant felt Ofelia was "giving him a signal" so he started to rub her back. Appellant then "leaned back next to her" and began rubbing her buttocks. Appellant stated Ofelia "didn't give me no reaction or anything like that," but she started making "a humming sound." According to appellant, Ofelia then scooted her body back, pressed her buttocks against his crotch, and began "grinding." Appellant stated he moved his hand from her buttocks to her stomach before putting his hand into her pants and rubbing her vagina over her underwear. He conceded Ofelia removed his hand from her pants, but said she placed it back on her stomach. After resting that way for a short while, Appellant stated he realized what they were doing was wrong and got up on his knees. At that point, he said, Ofelia got up, grabbed her phone, and walked quickly out of the room.

After hearing the evidence, the jury found appellant guilty of sexual assault. Appellant was sentenced to thirteen years in the state penitentiary. He timely brought this appeal.

**Analysis**

## I. Sufficiency of the Evidence

In his first issue, appellant contends the evidence is legally insufficient to support his conviction. When reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011). We do not resolve conflicts of fact, weigh evidence, or evaluate the credibility of the witnesses as this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead we determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the adjudication. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). The factfinder may choose to disbelieve all or any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). "A court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018).

A person commits a sexual assault if he knowingly or intentionally causes the penetration of the anus or sexual organ of another person by any means without that person's consent. TEX. PENAL CODE ANN. § 22.011(a)(1)(A). A sexual assault

–6–

is without the consent of the other person if the actor compels the other person to submit or participate by the use of physical force, violence, or coercion. *Id.* § 22.011(b)(1). Appellant argues the evidence is insufficient to show he used force, violence, or coercion to compel Ofelia to submit or participate in their sexual encounter.

Under the terms of the sexual assault statute, the focus is on the defendant's compulsion rather than the victim's resistance. *Carbajal v. State*, 659 S.W.3d 164, 180 (Tex. App.—El Paso 2022, pet. ref'd). The mere fact that a defendant did not see resistance or hear an outcry during the encounter is no evidence the victim consented to the act. *See Hawkins v. State*, 509 S.W.2d 607, 608 (Tex. Crim. App. 1974); *Fernandez v. State*, No. 07-16-00441-CR, 2018 WL 3131593, at *2 (Tex. App.—Amarillo June 26, 2018, pet ref'd) (mem. op., not designated for publication). Moreover, the State is not required to demonstrate any certain threshold of physical force used by the defendant, only that the defendant used some force. *Carbajal*, 659 S.W.3d at 180. The determination of whether force was used is made based on the facts and individual circumstances of each case. *See Gonzales v. State*, 2 S.W.3d 411, 415 (Tex. App.—San Antonio 1999, no pet.).

In this case, the jury was free to disbelieve appellant's version of what occurred, and believe Ofelia's testimony. *See Sharp*, 707 S.W.2d at 614. Ofelia stated that appellant had been her father figure since she was nine years old and, when he began kissing her in a sexual manner, she turned away from him to indicate

her discomfort. She had similarly pulled away from appellant on a previous occasion when he pinched her buttocks, and appellant understood this indicated Ofelia did not like what he was doing.

Despite Ofelia signaling her discomfort, appellant climbed onto her bed, wrapped his arm around her, and put his hand in her pajama pants. When Ofelia pulled his hand out of her pants, appellant still did not stop, but instead urged Ofelia to "show [him] a little" while wrapping his arm around her and putting his hand in her pants again. Appellant then put his hand in his step-daughter's underwear and inserted his fingers in her vagina. The encounter did not end until Ofelia escaped while appellant was trying to remove his pants. We conclude appellant's actions, in the face of Ofelia's indications that she did not want him to touch her in that manner, constitute sufficient evidence that he used physical force to sexually assault her. *See Mull v. State*, No. 14-01-01175-CR, 2003 WL 358692, at *2 (Tex. App.—Houston [14th Dist.] Feb. 20, 2003, pet. ref'd) (mem. op., not designated for publication) (evidence defendant got on top of victim without permission and continued to lay on top of her and penetrate her after she said to stop sufficient evidence of physical force). We resolve appellant's first issue against him.

## II. Charge Error

In his second issue, appellant contends the trial court erred in failing to define the term "coercion" in the jury charge. Appellant concedes he did not raise this objection at trial and, therefore, he must show egregious harm to obtain reversal.

*See Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019). Egregious harm occurs when the error created such harm that appellant was deprived of a fair and impartial trial. *Id*.

When a jury charge alleges alternative theories of culpability, any alleged harm caused by an instruction regarding one of the theories must be measured, at least in part, against the likelihood that the jury's verdict was based on a theory not affected by the erroneous portion of the charge. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012). If alternate methods of committing the offense are submitted to the jury, and the jury returns a general verdict of guilt, the verdict stands if the evidence is sufficient to support a finding under any of the theories submitted. *Id*.

The court's charge in this case properly instructed the jury that "a sexual assault is without the consent of the other person if the defendant compels the other person to submit or participate by the use of physical force, or violence, or coercion." In its closing arguments to the jury, the State focused on appellant's use of force. For example, the prosecutor argued,

> I want you to remember how she said, I moved his hand and he said, "Show me a little," and he put it back in. Because members of the jury, that is force. That is physical force.

When coercion was mentioned, it was generally argued as being synonymous with force. Appellant's defense did not address coercion, but instead asserted the encounter at issue was instigated by Ofelia. We have already concluded the evidence

–9–

is sufficient to support a finding that appellant compelled Ofelia to submit through the use of physical force. We further conclude any error in failing to include a definition of coercion in the jury charge did not cause appellant egregious harm. *See id.* We resolve appellant's second issue against him.

We affirm the trial court's judgment.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
220367F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ABEL GONZALES MENDEZ,
Appellant

No. 05-22-00367-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 422nd Judicial
District Court, Kaufman County,
Texas

Trial Court Cause No. 18-10975-422-
F.

Opinion delivered by Justice
Reichek. Justices Nowell and Garcia
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered April 7, 2023