# NO. 12-14-00186-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TOMMIE LEE WILLIAMS, JR.,* *APPELLANT* | § | *APPEAL FROM THE 282ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *DALLAS COUNTY, TEXAS* |

## *MEMORANDUM OPINION*[1]

Tommie Lee Williams, Jr. appeals his conviction for burglary of a habitation. Appellant raises four issues on appeal. We affirm.

## BACKGROUND

Appellant was charged by indictment with burglary of a habitation and pleaded "not guilty." The matter proceeded to a jury trial.

The evidence at trial showed that Appellant and Stacie Marie Elliott Winkle dated off and on from 2010 to 2012. By December 2012, Winkle was trying to end the relationship. On December 10, 2012, Appellant arrived at Winkle's house after she told him not to come. He broke into the house through a back window and assaulted Winkle.

Appellant was subsequently charged with burglary of a habitation. At trial, Appellant's counsel conceded in his closing argument that Appellant assaulted Winkle, but argued that it was not a burglary of a habitation because he had permission to be in Winkle's house. The jury disagreed and found Appellant guilty of the charged offense. Appellant then pleaded "true" to

---

[1] Pursuant to a docket equalization order issued by the Supreme Court of Texas on June 23, 2014, this appeal has been transferred to this Court from the Fifth Court of Appeals in Dallas, Texas.

both enhancements, and the trial court sentenced him to imprisonment for thirty years.  This appeal followed.

In his fourth issue, Appellant contends that the trial court lacked jurisdiction over his case.  Specifically, Appellant argues that his case was presented to Criminal District Court 1 of Dallas County, and was not transferred to the 282nd District Court's docket.  Consequently, his argument continues, Criminal District Court 1 retained jurisdiction over his case and the 282nd District Court never acquired jurisdiction.

## Applicable Law

A party can challenge the jurisdiction of a court for the first time on appeal.  *Adams v. State*, 222 S.W.3d 37, 58 (Tex. App.—Austin 2005, pet. ref'd).  A court's lack of jurisdiction is a fundamental error that does not require an objection to be preserved.  *Id.*

District courts have jurisdiction in felony criminal cases.  TEX. CODE CRIM. PROC. ANN. art. 4.05 (West 2005).  When two or more courts have concurrent jurisdiction of a felony case, the court in which the indictment or complaint is first filed retains jurisdiction.  *Id.* art. 4.16 (West 2005).  The legislature, through article 4.16, did not divest trial courts of jurisdiction, but instead prevented "confusion or contention between different courts having concurrent jurisdiction and each seeking to exercise jurisdiction."  *Garcia v. State*, 901 S.W.2d 731, 732 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd) (quoting *Flores v. State*, 487 S.W.2d 122, 125 (Tex. Crim. App. 1972)).  The fact that an indictment is returned in one court does not render the proceedings in a second court void.  *Mills v. State*, 742 S.W.2d 832, 835 (Tex. App.— Dallas 1987, no pet).  Therefore, a party must object at trial to the second court's jurisdiction to preserve error under article 4.16.  *Id.* ("Absent an objection, the proceedings in the [second trial court] were proper even though no transfer order appears of record.").

## Application

Here, Appellant's indictment was from the grand jury of Criminal District Court 1 of Dallas County.  We have reviewed the record and have not found a transfer order from Criminal District Court Number 1 to the 282nd District Court.

The record is not clear about how the case came to the 282nd District Court.  In an affidavit for arrest warrant or capias immediately following the indictment in the clerk's record,

the warrant number is designated as F-1224893-282. The 282 on the affidavit for arrest warrant or capias is handwritten, but it is unclear whether Appellant's case was assigned to the 282nd District Court at that time. In the instructions relating to his preliminary initial appearance, Appellant was informed that the charge was assigned to the 282nd District Court. Appellant received these instructions in December 2012, and the trial court rendered judgment in his case in May 2014. Appellant never objected to this assignment while his case was pending in the trial court.

The 282nd District Court had jurisdiction over Appellant's case. *See* TEX. CODE CRIM. PROC. ANN. art. 4.05. Appellant has shown only a possible violation of article 4.16, not a lack of jurisdiction of the 282nd District Court. *See Mills*, 742 S.W.2d at 835. Because Appellant failed to object to his case proceeding in the 282nd District Court without a transfer order from Criminal District Court 1, he failed to preserve error regarding any violation of article 4.16. *See id.* Accordingly, we overrule Appellant's fourth issue.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant contends that the evidence is insufficient to support his conviction. Specifically, Appellant argues that the State presented insufficient evidence that Appellant entered the habitation without Winkle's effective consent.

### Standard of Review and Applicable Law

Legal sufficiency of the evidence is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-88, 61 L. Ed. 2d 560 (1979); *Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd); *see also Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982). This familiar standard gives full play to the responsibility of

3

the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

Under this standard, we may not sit as a thirteenth juror and substitute our judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Brooks*, 323 S.W.3d at 899. Instead, we defer to the fact finder's resolution of conflicting evidence unless the resolution is not rational. *See Brooks*, 323 S.W.3d at 899-900; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime charged. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

As applicable to the facts of this case, to support Appellant's conviction for burglary of a habitation, the State was required to prove that (1) without Winkle's effective consent (2) Appellant entered her habitation and either (3a) had intent to commit an assault or (3b) committed or attempted to commit an assault. TEX. PENAL CODE ANN. § 30.02(a) (West 2011).

## Application

Winkle testified that her relationship with Appellant began when she lived in Dallas and continued somewhat when she moved to Garland. She said that Appellant stayed overnight in her apartment in Dallas on multiple nights and at her house in Garland on one or two occasions. However, Winkle denied that Appellant lived with her and strongly denied that Appellant had permission to enter her house on December 10, 2012.

By that date, Winkle had been telling Appellant for some time that she did not want a relationship with him, and Appellant had been begging for another chance for days. Winkle went to see Appellant that day because he threatened to hurt himself if she refused. She left Appellant after a brief visit, but saw him a short time later while she was driving. Appellant began

4

following Winkle, so she did not go home, but instead drove around Garland. Winkle texted Appellant a clear request to leave her alone, saying, "Don't go to my house. If you're anywhere near my house, I will call the police." Eventually, Winkle could not see Appellant's vehicle and thus believed Appellant had stopped following her. Winkle then went home.

Appellant soon arrived at Winkle's house. Winkle was outside when she saw him walking toward her. She again told Appellant to get away from her house. She went inside and locked the door. Appellant knocked on the front door, the front window, the back door, and the back window. He then forced his way into the house through the back window. Winkle was screaming at Appellant not to come in. Once Appellant was inside, he and Winkle had a confrontation, and Appellant assaulted Winkle. Appellant then took Winkle's phone and car keys and left. Winkle went to a neighbor's house and called the police.

Winkle also recounted a time in Dallas when Appellant attempted to force his way into her apartment. She yelled at him to go away, but he began kicking her door. Winkle called 911, and Appellant told Winkle that he was going to kill her when he got into the apartment.

A recording of Winkle's call to the police on the offense date was admitted into evidence. In it, Winkle claimed that her boyfriend came to her home and began banging on her doors. She said that she repeatedly texted him to go away. Winkle stated that the boyfriend broke in through the window, attacked her, and took her cell phone. She identified her boyfriend as Appellant.

Officer Jay Kirby with the Garland Police Department was the initial investigator on the scene. Kirby testified that Winkle told him her ex-boyfriend forced his way into her house by entering through a window.

As evidence that Appellant had Winkle's effective consent to enter the habitation, Appellant's mother testified that Appellant lived with Winkle in Dallas, and then they moved together to Garland. She claimed that Appellant lived with Winkle consistently until he went to jail. She did not testify as to any of the specific happenings on the night of the assault.

Having examined the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to prove Appellant entered Winkle's habitation without her effective consent. *See Brooks*, 323 S.W.3d at 899. A rational factfinder could have believed Winkle's testimony. *Id*. at 899-900. Thus, we hold that the evidence is sufficient to support the trial court's judgment. We overrule Appellant's first issue.

5

## ADMISSIBILITY OF TELEPHONE CONVERSATION

In his second issue, Appellant contends that the trial court erred in admitting into evidence a recording of a telephone conversation between Appellant and Winkle. Specifically, Appellant contends that law enforcement violated Appellant's Sixth Amendment right to counsel by having Winkle call Appellant.

### Standard of Review and Applicable Law

A trial court has considerable discretion in determining whether to exclude or admit evidence. *See* ***Montgomery v. State***, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990); ***State v. Dudley***, 223 S.W.3d 717, 724 (Tex. App.—Tyler 2007, no pet.). Absent an abuse of discretion, we will not disturb a trial court's decision to admit or exclude evidence. *See* ***Martin v. State***, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). We will uphold the trial court's ruling if it was within the zone of reasonable disagreement. *See* ***Weatherred v. State***, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *see also* ***Martin***, 173 S.W.3d at 467 (holding judgment must be upheld if ruling was correct on any theory of law applicable to case in light of what was before the trial court at time ruling was made).

Pursuant to the Sixth Amendment, a criminal defendant enjoys the right to assistance of counsel for his defense. U.S. CONST. amend. VI. "However, this Sixth Amendment right is offense specific." ***Cahvarriga v. State***, 156 S.W.3d 642, 646 (Tex. App.—Tyler 2004, pet. ref'd) (citing ***McNeil v. Wisconsin***, 501 U.S. 171, 175, 111 S. Ct. 2204, 2207, 115 L. Ed. 2d 158 (1991)). It cannot be invoked against potential future prosecutions that are being investigated. ***Id***. Instead, the right to counsel can only be invoked once the adversary judicial proceedings, whether formal charge, preliminary hearing, indictment, information, or arraignment, are commenced. ***Id.*** (citing ***Texas v. Cobb***, 532 U.S. 162, 167-68, 121 S. Ct. 1335, 1340, 149 L. Ed. 2d 321 (2001)).

### Application

A few days after Appellant entered Winkle's house and assaulted her, and prior to Appellant's being charged with burglary of a habitation, Winkle met with a Garland Police Department detective. During Winkle's interview, she told the detective that Appellant was calling her repeatedly. He asked Winkle to call Appellant from the police department so that he could record the conversation, and Winkle complied. During the conversation, Appellant admitted to breaking into Winkle's house and attacking her.

After voir dire, but before opening statements, the State informed the trial court of the recording by asserting that it had a one-party consent call recording of a conversation between Appellant and Winkle that it would offer into evidence. Then, in its opening statement, the State told the jury about the recording. Specifically, the State told the jury that it would hear Appellant in his own words "admit exactly what he did."

The trial court thought the State was referencing a telephone call that Appellant had initiated while in jail. Once the trial court understood that the call had been made by Winkle at the request of law enforcement, the trial court ruled the recording inadmissible. In making its ruling, the trial court stated, "[W]e don't want the police department using loopholes in the law to . . . enlist agents to call people and make incriminating statements." The trial court later clarified that its ruling was based on Appellant's right to a lawyer.

The trial court reconsidered its ruling on its own motion and decided to admit the recording into evidence. The trial court acknowledged that Appellant was on bond for a separate case involving Winkle in which Appellant was charged with robbery. The trial court further recognized that Appellant had an attorney in the robbery case, and the trial court believed that Winkle was acting as an agent for the Garland Police Department when she made the call. However, the trial court noted that there were no charges pending in the burglary of a habitation case at the time that Winkle made the telephone call to Appellant, and that Appellant was not in custody. Consequently, the trial court found that Appellant's Sixth Amendment right to counsel was not violated by Winkle's telephone conversation. After the trial court ruled the evidence admissible, Appellant renewed his objection that the evidence was obtained in violation of Appellant's Sixth Amendment right to counsel. The trial court overruled Appellant's objection.

The trial court ruled correctly in admitting the recording. Because the Sixth Amendment right to counsel is offense specific and because no charges had been filed in the burglary case when law enforcement had Winkle contact Appellant, the telephone recording of Winkle's conversation with Appellant was not a violation of Appellant's right to counsel. *See **Cahvarriga***, 156 S.W.3d at 646. We overrule Appellant's second issue.

In his third issue, Appellant argues that the trial court improperly charged the jury because it did not limit the definitions of "intentionally" and "knowingly" to the relevant conduct elements of the underlying offense.

**Applicable Law and Standard of Review**

In criminal jury trials, the trial court must deliver "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). Because the charge instructs the jury on the law applicable to the case, it must contain an accurate statement of the law and set out all essential elements of the offense. *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995).

The legislature has prescribed definitions of culpable mental states. *See* TEX. PENAL CODE ANN. § 6.03 (West 2011). A person acts intentionally with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a). A person acts knowingly with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. *Id.* § 6.03(b). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.*

In these definitions, penal code section 6.03 delineates three conduct elements that may be involved in an offense: (1) the nature of the conduct, (2) the result of the conduct, and (3) the circumstances surrounding the conduct. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). An offense may contain one or more of these conduct elements, which alone or in combination form the overall behavior that the legislature intended to criminalize. *Id.* It is those essential conduct elements to which a culpable mental state must apply. *Id.*

In a jury charge, the language regarding the culpable mental state must be tailored to the conduct elements of the offense. *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015). It is error for a trial court not to limit the definitions of the culpable mental states as they relate to the conduct elements involved in the particular offense. *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994).

Where a defendant properly preserves a jury charge issue for appellate review, we must ascertain if error actually occurred. *See Posey v. State*, 966 S.W.2d 57, 60 (Tex. Crim. App.

1998).  But an erroneous or incomplete jury charge does not result in automatic reversal. ***Abdnor v. State***, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  If error occurred, reversal is required if the error is "calculated to injure the rights of the defendant," which means that the accused has suffered some harm from the error.  ***Almanza v. State***, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  Thus, an error that has been properly preserved will require reversal only if the error is not harmless.  ***Id***.

The harm suffered must be more than merely theoretical harm.  ***Sanchez v. State***, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012).  We evaluate the issue of harm "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the arguments of counsel and any other relevant information revealed by the record of the trial as a whole."  ***Almanza***, 686 S.W.2d at 171.

If a defendant does not object at trial, the error must be "fundamental," resulting in "egregious harm."  ***Id.***  In that instance, reversal is required only if the error was so egregious and created such harm that the defendant "has not had a fair and impartial trial."  ***Id.***

## Application

Appellant argues for the first time on appeal that the trial court erred by failing to limit the definitions of "intentionally" and "knowingly" to the pertinent conduct elements.  Appellant contends that burglary of a habitation is a nature of conduct (entry) and circumstances surrounding conduct (without the owner's effective consent) offense.  Thus, he argues that the definitions for "intentionally" and "knowingly" should have been limited as follows:

> The following definition applies to the mental state in entering the building: A person acts intentionally or with intent with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct.
>
> The following definition applies to the knowing mental state: A person acts knowingly, or with knowledge with respect to the nature of his conduct when he is aware the circumstances exist.

The relevant portions of the trial court's charge read as follows:

> A person commits an assault if the person intentionally or knowingly or recklessly causes bodily injury to another.
>
> . . . .
>
> A person acts "recklessly" or is "reckless", with respect to circumstances surrounding his conduct or the result of his conduct when he is

9

aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the standpoint of the person so acting.

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonable [sic] certain to cause the result.

. . . .

Now, considering all the law contained in the Court's charge, if you believe from the evidence beyond a reasonable doubt that the Defendant, Tommie Lee Williams, Jr., on or about the 10th day of December, S.D., 2012, in the County of Dallas and said State, did unlawfully then and there intentionally or knowingly enter a habitation without the effective consent of Stacie Marie Elliott Winkle, the owner thereof, with the intent to commit assault against Stacie Marie Elliott Winkle;

OR

Further, said Defendant did unlawfully, intentionally or knowingly enter a habitation without the effective consent of Stacie Marie Elliott Winkle, the owner there of [sic], and did then and there commit or attempt to commit assault against Stacie Marie Elliott Winkle, then you will find the defendant guilty of the offense of burglary of a habitation, and say by your verdict, guilty.

The offense as charged contains multiple conduct elements. "Enters a habitation" is a result of conduct element, while "without the effective consent" is a circumstance surrounding the conduct element. *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995). Assault causing bodily injury is a result of conduct offense. *See Price*, 457 S.W.3d at 441-42. Thus, contrary to Appellant's argument, the offense did not include a nature of conduct element.

Because the offense did not contain a nature of conduct element, the trial court erred by failing to limit the definitions of culpable mental states to result and circumstances of conduct. *See Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1995). Appellant did not object to the trial court's charge as it related to the definitions of "intentionally" and "knowingly." Therefore, any error in those definitions is reversible only if Appellant was egregiously harmed such that he was denied a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171.

The charge's definitions of "intentionally" and "knowingly" indiscriminately set forth the three alternative conduct elements. But when those terms are viewed in their factual context as

10

set out in the charge, it becomes apparent which conduct element applies to which element of the offense. *See Patrick*, 906 S.W.2d at 493. For example, the application paragraph states that Appellant did "commit or attempt to commit assault against [Winkle]." In the definition of "assault," the terms "intentionally" and "knowingly" directly modify the phrase "causes bodily injury to another." Referring to the definition of culpable mental states, the portion that states "cause the result"—the result of conduct portion—is obviously the one that applies. *See id.*

The applicable portion of the definition with respect to the phrase "intentionally or knowingly enter a habitation" is less obvious. However, the end result is the same regardless of which portion the jury applied. If the jury applied the nature of conduct portion, then by their guilty verdict they found either that it was Appellant's "conscious objective or desire to engage in the conduct" of entering a habitation, or that Appellant was "aware of the nature of his conduct" in entering a habitation.

The word "enter" means "to go or come in." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 250 (11th ed. 2011). Thus, the conduct of "entering a habitation" necessarily results in being inside the habitation. Consequently, if the jury found that Appellant intentionally or knowingly engaged in the conduct of entering a habitation, it necessarily also found that he intentionally or knowingly caused the result of being inside the habitation.

We conclude that because the jury charge pointed the jury to the appropriate portion of the culpable mental state definition regarding assault, and because either portion of the culpable mental state definition leads to the same result regarding the entering of a habitation, Appellant was not egregiously harmed by the trial court's failure to limit the definitions such that he was denied a fair and impartial trial. *See Patrick*, 906 S.W.2d at 493. Accordingly, Appellant's third issue is overruled.

### DISPOSITION

Having overruled Appellant's four issues, we *affirm* the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered July 8, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 8, 2015**

**NO. 12-14-00186-CR**

**TOMMIE LEE WILLIAMS, JR.,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 282nd District Court
of Dallas County, Texas (Tr.Ct.No. F-1224893-S)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*