

# IN THE
# TENTH COURT OF APPEALS

## No. 10-14-00051-CR

**RUBEN MIGUEL ALANIZ,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 54th District Court
### McLennan County, Texas
### Trial Court No. 2012-2237-C2

## MEMORANDUM OPINION

In two issues, appellant, Ruben Miguel Alaniz, challenges his conviction for aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03 (West 2011). Specifically, Alaniz asserts that: (1) the jury charge erroneously defined the term "disabled person"; and (2) the evidence is insufficient to show that the victim, Patrick Abel, qualified as a "disabled person." Because we conclude that Alaniz was not egregiously harmed by the charge,

and because the evidence is sufficient to show that Abel qualified as a "disabled person," we affirm.

## I. BACKGROUND

On October 10, 2012, Alaniz was at Brame Park in Bellmead, Texas, installing a stereo in his Jeep when he was approached by Abel. Trial testimony revealed that Abel frequently rode his bicycle to the park and walked around the park for exercise. Additionally, Abel's mother, Julie Story, testified that Abel has "Attention Deficit Disorder with mild mental retardation" and that he was thirty-two at the time of trial. Story also noted that Abel receives SSI benefits as a disabled person; that Abel spent his school career in special-education classes; that Abel has no hope of ever living on his own; and that Abel "is one of the kindest people you ever want to meet. He has a heart of gold, and he's never met a stranger." Furthermore, for the past twelve years, Abel has worked a two-hour Saturday shift at McDonald's. In this job, Abel wipes down tables and cleans the restaurant. After ten years of service, McDonald's held a special ceremony and awarded Abel with a gold ring. Witnesses testified that Abel was very proud of the ring.

On the day in question, Abel saw Alaniz at the park and decided to approach. Abel began talking with Alaniz and eventually showed Alaniz his McDonald's ring. Abel testified that he allowed Alaniz to hold the ring. When Abel asked Alaniz to give the ring back, Alaniz used cuss words, allegedly pointed a gun at Abel, and "took off with Abel's

ring."[1] Distraught, Abel rode his bicycle to the Bellmead Police Department to report the incident.

Officer Derek Baker of the Bellmead Police Department took Abel's complaint. Officer Baker testified that Abel "seemed very upset" at the time. Subsequently, Officer Baker forwarded the complaint to Michael Miller, an investigator with the Bellmead Police Department. During the course of his investigation, Investigator Miller determined that Alaniz was a possible suspect. Thereafter, Abel identified Alaniz from a six-photo lineup as the perpetrator. Later, Investigator Miller interviewed Alaniz. During the interview, Alaniz admitted to taking the ring from Abel. In addition, Alaniz identified Abel as a "fucking retard" and asserted that "just because he robbed a retard, it shouldn't be an aggravated robbery." Moreover, Alaniz initially denied trying to sell the ring to his mother or anyone else; however, Investigator Miller later discovered that Alaniz had tried to sell the ring to his mother.

Alaniz also testified at trial. In his testimony, Alaniz admitted to taking Abel's ring and selling it to a gold buyer for about $450. Alaniz denied using a firearm in the commission of the offense. Alaniz acknowledged that he took advantage of Abel and that he had called Abel a "fucking retard."

---

[1] With respect to the cuss words, Investigator Miller testified that Alaniz told Abel to "back the fuck off" once Abel allowed Alaniz to hold the ring.

At the conclusion of the guilt-innocence phase of trial, the jury found Alaniz guilty of aggravated robbery. During the punishment phase of trial, the State introduced evidence of Alaniz's other criminal actions, including prior convictions for driving while intoxicated, unlawful possession of marihuana, assault family violence, and aggravated assault. Thereafter, the jury assessed punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice.[2] This appeal followed.

## II.     THE JURY CHARGE

In his first issue, Alaniz complains about the definition of "disabled person" contained in the jury charge. More specifically, Alaniz contends that he was egregiously harmed by language added to the charge definition of "disabled person" that is not included in the statutory definition.

### A.     Applicable Law

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, if error was not preserved

---

[2] Pursuant to a motion filed by Alaniz, the trial court entered a judgment nunc pro tunc on March 13, 2014, thereby amending the judgment to reflect that no finding had been made with respect to the use of a deadly weapon during the commission of this offense.

at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id.* To obtain a reversal for jury-charge error, appellant must have suffered actual harm and not merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

Alaniz admits that he did not object to the jury charge; thus, he must show egregious harm. *See Almanza*, 686, S.W.2d at 171. In examining the record for egregious harm, we consider the entire jury charge, the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

**B.    Discussion**

The definitions section of the charge provided the following definition for "disabled person": "[A] person older than 14 years of age who by reason of age or physical or mental disease, defect, or injury is substantially unable to protect himself from harm or to provide food, shelter, or medical care for himself." The first portion of the charge definition is substantially similar to the definition provided in section 29.03(c) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 29.03(c) (defining "disabled person"

as "an individual with a mental, physical, or developmental disability who is substantially unable to protect himself from harm"). However, the second portion of the charge definition (i.e., "to provide food, shelter, or medical care for himself") does not precisely follow section 29.03(c). *See id.*

In any event, assuming without deciding that the second portion of the charge definition is an incorrect statement of the law, we cannot say that Alaniz was egregiously harmed. As stated earlier, when conducting an egregious-harm analysis, we consider the entire jury charge, the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *See Olivas*, 202 S.W.3d at 144.

Here, if we were to assume that the second portion of the charge definition of "disabled person" is a misstatement of the law, we note that the first portion of the charge definition is substantially similar to the definition provided in section 29.03(c), thereby allowing the jury to find that Abel is disabled because he is unable to protect himself from harm. *See* TEX. PENAL CODE ANN. § 29.03(c). Furthermore, we believe that the complained-of error was likely minimized by the arguments of counsel and correct statements of law in the application paragraph of the charge.[3] More specifically, neither

---

[3] We recognize that the State asked Story a few questions about Abel's ability to purchase food, his living arrangements, and his ability to secure medical care. However, the majority of the proffered evidence centered on Abel's inability to protect himself—a necessary requirement to prove the status of "disabled person" under section 29.03(c) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 29.03(c) (West 2011).

party argued at trial about Abel's status as a "disabled person." Indeed, Alaniz focused his opening and closing arguments on whether or not a gun was used in the commission of the offense, not on Abel's status as a "disabled person."

Additionally, the record contains ample evidence demonstrating that Abel is "unable to protect himself from harm." Story testified that Abel spent his school career in special-education classes and that Abel has "Attention Deficit Disorder with mild mental retardation." Story also noted that Abel receives SSI benefits as a disabled person. Moreover, Story stated that Abel is unable to protect himself from harm and that he will never be able to live on his own or care for himself. The evidence also shows that Abel is unable to drive a car and will never be able to do so and that Abel is very friendly to strangers. In fact, Story recounted that Abel "is one of the kindest people you ever want to meet. He has a heart of gold, and he's never met a stranger. Ever. I could be talking to somebody and he'll walk up to them and shake their hand and want to know who they are."

Other testimony, including that of Alaniz, also touches on Abel's inability to protect himself from harm. During an interview with Investigator Miller, Alaniz admitted to taking Abel's ring and identifying Abel as a "fucking retard"—facts also confirmed in Alaniz's trial testimony. Alaniz also complained to Miller that "just because he robbed a retard, it shouldn't be an aggravated robbery." Furthermore, Abel testified about the incident, which gave the jury insight into the extent of his disability.

And finally, on appeal, Alaniz contends that because the second portion of the charge definition was purportedly a misstatement of the law, "there could have been some sympathetic impact leading to a relaxing of the beyond a reasonable doubt standard for threatening or placing in fear if the jury believed that Mr. Abel qualified as a 'disabled person' when he did not under the law." However, the Texas Court of Criminal Appeals has stated that, to reverse a conviction due to jury-charge error, appellant must have suffered actual harm and not merely theoretical harm. *Sanchez*, 376 S.W.3d at 775; *Arline*, 721 S.W.2d at 352. Besides speculating, Alaniz does not direct us to any portion of the record indicating that he suffered actual harm due to the purportedly erroneous charge definition of "disabled person." *See Sanchez*, 376 S.W.3d at 775; *Arline*, 721 S.W.2d at 352.

Therefore, based on the foregoing, we cannot say that the purported error in the charge affected the very basis of the case, deprived Alaniz of a valuable right, or vitally affected his defensive theory. *See Almanza*, 686 S.W.2d at 171; *see also Stuhler*, 218 S.W.3d at 719; *Sanchez*, 209 S.W.3d at 121. In other words, we cannot conclude that Alaniz was egregiously harmed by the complained-of error. *See Almanza*, 686 S.W.2d at 171; *see also Stuhler*, 218 S.W.3d at 719; *Sanchez*, 209 S.W.3d at 121. We overrule Alaniz's first issue.

## III. EVIDENTIARY SUFFICIENCY

In his second issue, Alaniz argues that the State failed to present sufficient evidence for a rational factfinder to conclude beyond a reasonable doubt that Abel was

unable to protect himself from harm.  As such, Alaniz asserts that the record evidence is insufficient to establish that he is guilty of aggravated robbery.

## A.    Applicable Law

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction."  *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted.  *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).  And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.  *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.  Furthermore, direct and circumstantial evidence are treated equally:  "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to

establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

**B.    Discussion**

Section 29.03(a) of the Texas Penal Code provides that a person commits the offense of aggravated robbery if he commits robbery and he: (1) causes serious bodily injury to another; (2) uses or exhibits a deadly weapon; or (3) causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the other person is sixty-five years of age or older or is a disabled person. TEX. PENAL CODE ANN. § 29.03(a). On appeal, Alaniz focuses on Abel's purported status as a "disabled person." In particular, Alaniz asserts that the State did not proffer sufficient evidence to demonstrate that Abel is unable to protect himself from harm. We disagree.

As stated earlier, Story testified that Abel spent his school career in special-education classes and that Abel has "Attention Deficit Disorder with mild mental retardation." Story also noted that Abel receives SSI benefits as a disabled person. Moreover, Story stated that Abel is unable to protect himself from harm and that he will never be able to live on his own or care for himself. The evidence also shows that Abel is unable to drive a car and will never be able to do so and that Abel is very friendly to strangers. Story recounted that Abel "is one of the kindest people you ever want to meet. He has a heart of gold, and he's never met a stranger. Ever. I could be talking to somebody and he'll walk up to them and shake their hand and want to know who they are."

Other testimony, including that of Alaniz, also touches on Abel's inability to protect himself from harm. During an interview with Investigator Miller, Alaniz admitted to taking Abel's ring and identifying Abel as a "fucking retard"—facts also confirmed in Alaniz's trial testimony. Alaniz also complained to Miller that "just because he robbed a retard, it shouldn't be an aggravated robbery." Furthermore, Abel testified about the incident, which gave the jury insight into the extent of his disability.

Despite the foregoing evidence, Alaniz complains that the State did not proffer medical evidence to prove that Abel is indeed disabled. Alaniz does not cite, nor are we aware of, authority requiring the State to proffer medical testimony to prove that the victim of a robbery is disabled. In fact, a couple of Texas courts have affirmed aggravated

robbery convictions based on disability findings without medical testimony. *See, e.g.,* *Waller v. State*, No. 06-03-00039-CR, 2004 Tex. App. LEXIS 330, at *1, *13 (Tex. App.—Texarkana Jan. 14, 2004, no pet.) (mem. op., not designated for publication) ("Bruce E. Williams testified McPherson is mentally challenged. . . . Last, evidence was introduced that McPherson is disabled. . . . Therefore, there is legally sufficient evidence to support the jury's verdict."); *Carr v. State*, No. 07-99-0213-CR, 1999 Tex. App. LEXIS 7948, at **3-4, *12 (Tex. App.—Amarillo Oct. 25, 1999, pet. ref'd) (mem. op., not designated for publication) (affirming a conviction for aggravated robbery based, in part, on the victim's testimony about his own physical disabilities).

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational factfinder could conclude that Abel was unable to protect himself and, thus, is disabled and that Alaniz committed aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03; *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. As such, we hold that the evidence is sufficient to support Alaniz's conviction for aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03; *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. We overrule Alaniz's second issue.

## IV.   CONCLUSION

Having overruled both of Alaniz's issues on appeal, we affirm the judgment of the trial court.

AL SCOGGINS
Justice


Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
(Chief Justice Gray concurring with a note)*
Opinion delivered and filed August 6, 2015
Do not publish
[CRPM]

*(Chief Justice Gray concurs in the judgment. A separate opinion will not issue but he provides the following note: In this case the trial court expanded the definition in the charge of what it means to be a disabled person by adding "or to provide food, shelter, or medical care for himself" to the statutory definition that it means a person that is "…substantially unable to protect himself from harm." Alaniz argues that this allowed the jury to convict him upon a determination of the status of the victim as being disabled when the victim was actually not disabled within the statutory definition. I disagree. The added disjunctive clause, "or to provide food, shelter, or medical care for himself" is nothing more than a reference to a specific way that a person is unable to protect themselves from harm. As such it may have been an improper comment on the weight of the evidence, but it certainly did not authorize a conviction on a theory that was not otherwise within the statutory definition of a disabled person. I find that all the evidence that shows that the victim was unable to provide food, shelter, or medical care for himself was simply evidence of a specific way that showed the victim was disabled by being unable to protect himself from harm. It may have been erroneous to include the phrase in the definition but it is was not error for the reasons argued by Alaniz. Accordingly I would overrule the first issue on the merits. With these additional comments I concur in the judgment of the trial court convicting Alaniz.)

