**Opinion issued February 19, 2026.**



In the

# Court of Appeals

for the

# First District of Texas

_____

## NO. 01-24-00273-CR

_____

**ASHTON JUWAN BYRON, Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 23-CR-0557**

---

## MEMORANDUM OPINION

A jury found appellant guilty of the offense of burglary of a habitation with the intent to commit the felony of aggravated assault. *See* TEX. PENAL CODE § 30.02(d). Appellant contends that the trial court erred by (1) instructing the jury on party and coconspirator liability because the alleged primary actor was unarmed

and thus could not have committed the offense at issue; (2) failing to instruct the jury that conviction under the coconspirator liability theory required proof that the alleged primary party had the specific intent to commit aggravated assault; and (3) instructing the jury on criminal conspiracy, an offense not alleged in the indictment.

We overrule appellant's points of error related to the party and coconspirator liability instructions because the evidence is sufficient to support a guilty verdict on the jury charge's alternative theory that appellant committed the offense at issue as the primary actor. We conclude further that the inclusion of an instruction on the law of criminal conspiracy was not erroneous and constituted merely an alternative law-of-parties charge as provided for in section 7.02(b) of the Texas Penal Code.

We affirm the trial court's judgment.

## Background

### A. Events of February 1, 2023

Melanie Carter and Nicolas Richie testified that, on February 1, 2023, they were running an errand in Texas City with two of their children and Richie's mother. While running the errand, Carter and Richie encountered appellant, whom Carter had met previously at the home of a mutual acquaintance, Andrea Arispe. Appellant was with a man Carter and Richie did not know. A confrontation occurred between Richie and appellant. Richie claims that he and appellant "had

some words," that appellant brandished a set of brass knuckles, that Richie then used his phone to take photographs of appellant and appellant's vehicle, and that Richie then returned to Richie's vehicle, where his children were waiting.

Appellant later told an investigating officer that, after Richie and appellant had a verbal confrontation, Richie wanted to fight, and that is why appellant grabbed his brass knuckles. Appellant claimed that Richie then showed appellant that Richie had a gun, after which Richie's mother pushed Richie away from appellant. Appellant said that Richie then took a photo of appellant and left.

After the confrontation, Carter and Richie returned to their apartment, which was leased under Richie's name.

According to Carter and Richie, at their apartment, Carter ignored multiple phone calls and messages from Arispe before Carter and Richie's mother or Carter answered a call from Arispe. During that call, Arispe kicked open the door to Carter and Richie's apartment and entered accompanied by two men: Arispe's husband, Efren Gonzalez, and appellant.

According to Richie, all three entered the apartment. Carter saw Arispe enter the apartment and saw Gonzalez "right next to" Arispe, though she had only a partial view of Gonzalez. Carter testified that she also saw appellant inside the apartment.

3

Richie testified that he saw that appellant had a shotgun and, as Richie went to pull his own weapon, Richie was shot in his hand and chest. Richie's weapon was a handgun. Carter testified that the shotgun was shot from outside the apartment. Richie testified that he jumped to protect his two youngest children, who were nearby, and in the process was shot by appellant a second time. Appellant shot Richie's mother in the face.

Police officers collected evidence of at least two shotgun shots having been fired in or into the apartment.

Richie testified that he shot twice "out the door" in an attempt to scare Arispe, Gonzalez, and appellant from the apartment. When the three "took off running," Richie chased them to where their vehicle was parked. As Arispe, Gonzalez, and appellant were fleeing, appellant pointed the shotgun at Richie twice more. Each time, Richie fired his own gun.

Appellant told an investigating officer that he, Arispe, Gonzalez, and a fourth individual named "CJ" had gone to Carter and Richie's apartment that day. While he told the officer that all four went to the apartment door, only Arispe entered the apartment. Richie's neighbor testified that he was out walking his dog and heard three shotgun shots, heard several pistol shots five to ten seconds later, and then saw Richie chasing and shooting at four people.

4

According to Richie, after Arispe, Gonzalez, and appellant had driven away, Richie returned to the apartment. Carter and Richie's two youngest children were "covered in blood," but neither had been shot. The blood belonged to Carter, Richie, and Richie's mother. They had all been shot as they had "kind of dog piled on top" of the children to protect them.

Arispe was shot twice, once by Richie and once, in the back, by a shotgun. Police found two shotgun shells outside the apartment.

## B.    Indictment

Appellant was indicted on a charge of burglary with the intent to commit a felony. The indictment alleged that, on February 1, 2023, appellant, "with intent to commit the felony offense of Aggravated Assault With Deadly Weapon, enter[ed] a habitation, without the effective consent of [Richie], the owner thereof." It alleged further that "a deadly weapon, to-wit: a shotgun, was used or exhibited during the commission of the aforesaid offense or during immediate flight following [its] commission" and that appellant "used or exhibited said deadly weapon or was a party to the aforesaid offense and knew that a deadly weapon would be used or exhibited." The indictment listed as an enhancement a prior conviction for felony possession of a controlled substance.

## C. Trial

Appellant's jury trial and sentencing occurred over three days in February 2024. The jury charge on guilt or innocence informed the jury that appellant was accused of committing the offense of burglary of a habitation with the intent to commit a felony. The jury charge noted that the State's contention was that appellant "committed the offense of Burglary of Habitation with Intent to Commit Felony" under three alternative theories:

(1) appellant "committed Burglary of Habitation" by his own conduct as a primary actor;

(2) Arispe "committed Burglary of Habitation" and appellant "is criminally responsible for this offense as a party" because appellant "solicited, encouraged, directed, aided, or attempted to aid" Arispe in committing it; and

(3) Arispe "committed Burglary of Habitation" and appellant "is criminally responsible for this offense as a coconspirator."

As relevant here, the jury charge instructed the jury that:

**Liability as Primary Actor**

A person commits the offense of burglary of habitation if the person without the effective consent of the owner, enters a habitation with intent to commit a felony, theft, or an assault.

A person commits the offense of aggravated assault if the person intentionally, knowingly, or recklessly causes bodily injury to another and uses or exhibits a deadly weapon during the commission of the assault.

6

### Responsibility for Conduct of Another as Party

A person who does not by his own conduct commit an offense may nonetheless be criminally responsible for the conduct of another person.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

A defendant acts with intent to promote or assist in the commission of an offense when it is his conscious objective or desire to promote or assist in the commission of the offense.

A defendant's mere presence alone will not make him responsible for an offense. A defendant's mere knowledge of a crime or failure to disclose a crime is not sufficient.

### Responsibility for Felony Committed by Coconspirator

The defendant may be responsible for a burglary of habitation committed by someone else, because the defendant joined an unlawful conspiracy. At least one member of the unlawful conspiracy must have intentionally entered a habitation without consent of the owner before the defendant can be responsible for burglary of habitation.

A member of a conspiracy to commit one felony offense is guilty of another felony offense committed by one of his coconspirators when that other felony offense was committed in furtherance of the original unlawful conspiracy and was one that should have been anticipated as a result of the unlawful conspiracy. Under those circumstances, all coconspirators are guilty of the felony offense actually committed by one member of the conspiracy, though the rest of them had no intent to commit it.

Burglary of habitation and aggravated assault are felony offenses.

The jury charge further instructed the jury that:

### Application of Law to Facts

You must determine whether the state has proved, beyond a reasonable doubt, that the defendant is guilty of Burglary of Habitation with Intent to Commit a Felony, either as the primary actor, as a party, or as a coconspirator.

### Liability as Primary Actor

You must determine whether the state has proved the defendant committed the crime by his own conduct. To prove this, the state must prove, beyond a reasonable doubt, four elements. The elements are that-

1. the defendant, in Galveston County, Texas, on or about the 1st day of February, 2023, entered a habitation; and
2. the place entered was a habitation owned by Nicholas Richie; and
3. Nicholas Richie, the owner of the habitation, did not effectively consent to this entry; and
4. the defendant intended to commit aggravated assault.

If you all agree the state has proved, beyond a reasonable doubt, each of the four elements listed above, you must find the defendant "guilty."

### Liability as Party

If any of you fail to agree the state has proved, beyond a reasonable doubt, any of the four elements listed above, you must next decide whether the state has proved, beyond a reasonable doubt, that the defendant is guilty because he is criminally responsible for the commission of a crime committed by the conduct of another person. This is the case if the state has proved, beyond a reasonable doubt, five elements. The elements are that-

1. in Galveston County, Texas, on or about the 1st day of February, 2023, Andrea Arispe intentionally or knowingly entered a habitation; and
2. the place entered was a habitation owned by Nicholas Richie; and

8

3. Nicholas Richie, the owner of the habitation, did not effectively consent to this entry; and
4. Andrea Arispe intended to commit aggravated assault; and
5. the defendant encouraged, aided, or attempted to aid Andrea Arispe to commit burglary of habitation.

If all of you who did not find the defendant guilty as the primary actor agree that the state has proved, beyond a reasonable doubt, each of the five elements listed above, you must find the defendant "guilty."

**Liability as Coconspirator**

If any of you fail to agree the state has proved, beyond a reasonable doubt, any of the four elements of primary liability or any of the five elements of party liability listed above, you must next decide whether the state has proved, beyond a reasonable doubt, that the defendant is guilty because he is criminally responsible for the conduct of a coconspirator. This is the case if the state has proved, beyond a reasonable doubt, five elements. The elements are that-

1. in Galveston County, Texas, on or about the 1st day of February, 2023, the defendant joined a conspiracy to commit aggravated assault; and
2. in an attempt to carry out this conspiracy, Andrea Arispe entered a habitation owned by Nicholas Richie; and
3. Nicholas Richie, the owner of the habitation, did not effectively consent to this entry; and
4. the burglary of habitation was committed in furtherance of the unlawful conspiracy; and
5. the burglary of habitation should have been anticipated as a result of this conspiracy.

If all of you who did not find the defendant guilty as the primary actor or as a party agree that the state has proved, beyond a reasonable doubt, each of the five elements of coconspiracy liability listed above, you must find the defendant "guilty."

. . . .

9

You need not be unanimous about the theory underlying either your "guilty" or "not guilty" verdict. If you all agree the defendant is guilty either as the primary actor, or as a party, or as a coconspirator, then you must find the defendant "guilty." If you all agree the state has failed to prove, beyond a reasonable doubt, the elements of primary actor liability[;] has failed to prove, beyond a reasonable doubt, the elements of party liability; and has failed to prove, beyond a reasonable doubt, the elements of coconspirator liability, you must find the defendant "not guilty."

The jury found appellant guilty of burglary of a habitation with the intent to commit a felony. The jury sentenced appellant to 25 years' imprisonment. This appeal followed.

## Jury Charge

In his first and second points of error on appeal, appellant argues that the trial court erred in instructing the jury on party and coconspirator liability because the alleged primary actor, Arispe, was unarmed and thus could not have committed the offense of burglary of a habitation with the intent to commit the felony of aggravated assault. Appellant's third point of error is his claim that the trial court erred in instructing the jury on criminal conspiracy, an offense not alleged in the indictment. His fourth point of error is his claim that the trial court "erred in failing to instruct the jury that conviction under the coconspirator liability theory required proof that . . . Arispe had the specific intent to commit aggravated assault."

Appellant argues that the trial court's errors, to which he did not object at trial, caused him egregious harm. The State disputes each of appellant's points of

10

error and argues that, even if there was error in the trial court's jury charge, appellant has not shown that he suffered egregious harm from such error.

## A.    Standard of Review

The purpose of the trial court's jury charge is to inform jurors of the law applicable to the case and guide them in its application. TEX. CODE CRIM. PROC. art. 36.14; *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019). Abstract paragraphs serve as a glossary to help the jury understand the meaning of concepts and terms used in the charge's application paragraphs, and application paragraphs apply the pertinent law, definitions, and legal principles to the particular facts and indictment allegations at issue. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022). Reversible error in the giving of an abstract instruction generally occurs only when the instruction is an incorrect or misleading statement of law that the jury must understand in order to implement the commands of the application paragraph. *Id.* The failure to give an abstract instruction is reversible only when it is necessary to a correct or complete understanding of concepts or terms in the application part of the charge. *Id.*

Where, as here, there was not a timely objection to an alleged jury-charge error, the appellant can obtain relief only if the record shows "egregious harm." *Id.* Harm is assessed in light of the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information revealed by the record of

11

the trial as a whole. *Id*. Egregious harm must be based on actual rather than theoretical harm, and is a difficult standard to meet. *Id.* An erroneous jury charge is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory. *Id*.

## B. Applicable Law

"[L]iability as a party is an available legal theory if it is supported by the evidence." *In re State ex rel. Weeks*, 391 S.W.3d 117, 124 (Tex. Crim. App. 2013). Under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE § 7.01(a). A person is "criminally responsible for an offense committed by the conduct of another if[,] . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id*. § 7.02(a)(2). "In general, an instruction on the law of parties may be given to the jury whenever there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties." *Malbrough v. State*, 612 S.W.3d 537, 562 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (quoting *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999)).

## C.    Instructions Premised on Arispe as Primary Actor

Neither party has cited a case involving an alleged primary actor charged with the offense at issue—burglary of a habitation with the intent to commit the felony of aggravated assault—who was unarmed, much less one in which the alleged primary actor was not alleged to have personally physically injured anyone throughout the burglary. Nor have we found such a case.

The State argues that the evidence supported the submission of the party-liability instructions because the jury heard evidence that Arispe was "amped up" and wanted to fight, that Arispe had repeatedly attempted to contact Carter and Richie's family just before entering Carter and Richie's apartment, that she threatened to harm Carter and Richie, and that she followed through with her threats by arriving at Carter and Richie's apartment with backup including someone armed with a shotgun. The jury also heard evidence that Arispe "kick[ed] down" the door to Carter and Richie's apartment and, specifically, "used all her force on the door and . . . used her foot on the door to kick it wide open." In addition, the jury heard evidence that appellant used the shotgun in his possession to shoot both Richie and his mother.

Even assuming such evidence does not support the submission of the party-liability instruction at issue, appellant cannot show that he was harmed by the erroneous submissions because the evidence is sufficient to support a finding that

appellant committed the offense at issue as the primary actor. *See Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012) ("In a jury charge alleging alternative theories, harm must be measured 'at least in part, against the likelihood that the jury's verdict was actually based upon an alternative available theory of culpability not affected by erroneous portions of the charge.'" (quoting *Atkinson v. State*, 923 S.W.2d 21, 27 (Tex. Crim. App. 1996), *abrogated on other grounds by Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002))); *Brown v. State*, 580 S.W.3d 755, 763 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (same). "When a jury returns a general guilty verdict on an indictment charging alternate methods of committing the same offense, the verdict stands 'if the evidence is sufficient to support a finding under any of the theories submitted.'" *Sanchez*, 376 S.W.3d at 775 (quoting *Kitchens v. State*, 823 S.W.2d 256, 258-59 (Tex. Crim. App. 1991)); *see also Calvert v. State*, No. AP-77,063, 2019 WL 5057268, at *56 (Tex. Crim. App. Oct. 9, 2019) (mem. op., not designated for publication) (same); *Harris v. State*, No. 01-23-00549-CR, 2025 WL 994036, at *7 (Tex. App.— Houston [1st Dist.] Apr. 3, 2025, pet. ref'd) (mem. op., not designated for publication) (same); *Canfield v. State*, 429 S.W.3d 54, 70 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (same); *Brown*, 580 S.W.3d at 763 (same).

Here, the evidence is sufficient to support a finding that appellant committed the offense at issue as the primary actor because a reasonable jury could have

found based on the evidence presented at trial that appellant, without the effective consent of Richie, entered Richie's apartment with the intent to cause bodily injury to another and use or exhibit a deadly weapon during the commission of the assault. Appellant argues that the evidence does not "clearly establish" that he fired his shotgun inside the apartment. But under the cited authorities, we consider only whether the evidence at trial was sufficient to support a conviction of appellant as principal. *See Sanchez*, 376 S.W.3d at 775; *Calvert*, 2019 WL 5057268, at *56; *Harris*, 2025 WL 994036, at *7; *Canfield*, 429 S.W.3d at 70; *Brown*, 580 S.W.3d at 763. The State was not required to show that appellant committed an aggravated assault while inside the apartment but instead that appellant unlawfully entered the apartment with the intent to commit an aggravated assault. *See Jacob v. State*, 892 S.W.2d 905, 909 (Tex. Crim. App. 1995). Both Carter and Richie gave testimony that a reasonable jury could have interpreted as evidence that appellant entered the apartment.[1] That evidence, combined with the evidence that appellant shot Richie and his mother very close in time to his entry into and exit from the apartment, is

---

[1] When asked when she saw the shotgun, Carter testified that: "I saw it after [Arispe] made a comment and then [appellant] stepped inside my house." Richie testified that he saw "[t]hree people" come "through the door," and a "shotgun come through." Richie's list of people who were inside the house at the time he and his mother were shot included "[appellant] with a gun, [Arispe] right in front of [appellant], and then [Gonzalez] behind him." Richie agreed that he saw Arispe "walk in first," "then right behind is [appellant]," and "right behind is [Gonzalez]." Richie also agreed that Arispe "physically enter[ed] the apartment" and that appellant was "on her right," and stated that Gonzales was "right behind [appellant] at the front of the door."

sufficient evidence to support a conviction of appellant as principal. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) ("Intent may . . . be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant."). We thus overrule appellant's first and second issues on appeal.

## D.    Omitted Instruction

In his fourth point of error, appellant argues that the trial court "erred in failing to instruct the jury that conviction under the coconspirator liability theory required proof that . . . Arispe had the specific intent to commit aggravated assault." Appellant notes that, in its application paragraph for *party* liability, i.e., liability under section 7.02(a) of the Texas Penal Code, the trial court required the jury to find that Arispe "intended to commit aggravated assault." He argues that the trial court erred in not including similar language in the charge's abstract and application sections relating to *coconspirator* liability, i.e., liability under section 7.02(b) of the Texas Penal Code.

As above, even assuming the trial court's coconspirator liability instructions were erroneous in this respect, appellant cannot show that he was harmed by that error because the evidence is sufficient to support a finding that appellant committed the offense at issue as the primary actor. *See Sanchez*, 376 S.W.3d at 775; *Brown*, 580 S.W.3d at 763. The jury having returned a general guilty verdict on an indictment charging alternate methods of committing the same offense, its

16

verdict stands because the evidence is sufficient to support a finding under one of the theories submitted. *See Sanchez*, 376 S.W.3d at 775; *Calvert*, 2019 WL 5057268, at \*56; *Harris*, 2025 WL 994036, at \*7; *Canfield*, 429 S.W.3d at 70; *Brown*, 580 S.W.3d at 763.

### E.     Criminal Conspiracy Instruction

In his third issue, appellant argues that the trial court erred in submitting an abstract instruction on the law of criminal conspiracy because it was not alleged in the indictment. The specific language he challenges is an instruction reciting the elements of a criminal conspiracy as set forth in section 15.02(a) of the Texas Penal Code.[2] The State argues that the instruction was not erroneous given the jury was properly instructed to consider alternate party-liability theories under section 7.02 of the Texas Penal Code, which encompasses coconspirator liability. *See, e.g.*, TEX. PENAL CODE § 7.02(b) (stating in part that, "[i]f, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the

---

[2]     *See* TEX. PENAL CODE § 15.02(a) ("A person commits criminal conspiracy if, with intent that a felony be committed: (1) he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and (2) he or one or more of them performs an overt act in pursuance of the agreement.").

17

unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy").

Addressing similar claims of charge error in cases in which the indictment did not include an allegation of criminal conspiracy, the Texas Court of Criminal Appeals and other Texas courts have held that the inclusion of an instruction on the law of criminal conspiracy was not erroneous because it constituted merely an alternative law-of-parties charge as provided for in section 7.02(b) of the Texas Penal Code. *See Montoya v. State*, 810 S.W.2d 160, 164-65 (Tex. Crim. App. 1989) (involving instruction stating in part that, "[b]y the term 'conspiracy' as used in these instructions[] is meant an agreement between two or more persons, with intent that a felony be committed, that they, or one or more of them, engage in conduct that would constitute the offense"); *Romero-Perez v. State*, No. 03-22-00494-CR, 2023 WL 5109606, at *2-4 (Tex. App.—Austin Aug. 10, 2023, no pet.) (mem. op., not designated for publication) (involving instruction tracking language of subsections 15.02(a)-(c) of Texas Penal Code); *Gray v. State*, No. 05-21-00946-CR, 2023 WL 415941, at *4-5 (Tex. App.—Dallas Jan. 26, 2023, no pet.) (mem. op., not designated for publication) (involving instruction tracking language of subsections 15.02(a)-(b) of Texas Penal Code); *Hatch v. State*, No. 05-13-01710-CR, 2015 WL 4723620, at *4 (Tex. App.—Dallas Aug. 10, 2015, pet. ref'd) (mem. op., not designated for publication) (same).

Based on that precedent, we overrule appellant's third issue on appeal.

## Conclusion

Having overruled each of appellant's points of error, we affirm the trial court's judgment.

Amparo "Amy" Guerra
Justice

Panel consists of Justices Guerra, Caughey, and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).